## ATKINSON v. DOWLING.

1. *Query:* Where a power of appointment is to be executed by "last will and testament or other writing executed in the presence of three or more witnesses," must there be three *subscribing* witnesses, to such other writing? And if so, would the recital in the instrument of appointment that it had been executed in the presence of three witnesses be sufficient, where only two persons subscribed their names as witnesses?

2. Where an estate is given to one for life with a power of appointment of the remainder in fee, and with valid limitations over if the power is not executed, it is a power collateral or in gross, and is not a power in trust. And such a power may be released or extinguished by the act of the donee, where the intention so to release or relinquish clearly appears.

3. Where the donee of a power collateral or in gross professes to execute her power of appointment and then joins in a deed with general warranty, and uses the consideration of such deed in paying off a charge put upon the premises by the donor of the power, she sufficiently evidences her intention of releasing her power of appointment as to the property so conveyed; and her subsequent will, containing a general appointment under this power, will be construed to refer only to such parts of the donor's estate as were not embraced in such release.

4. Where the remaindermen in fee in default of appointment convey all their interests in the estate to the life tenant, who has also a power of appointment, is the estate of the life tenant thereby enlarged into an estate in fee?

5. The donee of a power of appointment in gross over several tracts and

lots of land, may release her power as to one of them and execute the power as to the others.

Before HUDSON, J., Barnwell, March, 1890.

The Circuit decree, omitting its statement of facts, was as follows :

It is conceded by plaintiffs that the property over which the power of appointment existed in favor of Mrs. Patterson could only be disposed of by will or instrument in that nature at her death, and that the conveyance to James Patterson, and subsequently to the trustees, are therefore invalid, so far as they undertake to dispose of the fourth over which Mrs. Patterson held the power, and that as plaintiffs have had the power of appointment legally made to them, that they are entitled to the relief asked.

Plaintiffs' position is not sound, and they and the defendant, Isabel C. Aldrich, are not entitled to the one-fourth or any other interest in the above described premises. By the terms of the devise a life estate vested in the widow, Mrs. Patterson, with a vested remainder in fee to the sons, subject to be divested by the exercise of the power. *Williman* v. *Holmes*, 4 Rich. Eq , 475 ; *Bilderback* v. *Boyce*, 14 S. C., 528 ; 2 Sugd. Pow., 4, 5 ; 4 Kent Com., 324 ; 2 Lead. Cas. Real Prop., 276.

The sons, having a vested remainder in fee, could convey the same, subject only to the power of appointment. When they conveyed in fee to Mrs. Patterson, she became legal owner of the premises in fee simple. The weight of authority is that the power did not merge by the union of the life estate and remainder in Mrs. Patterson. Sugd. Pow., 131. She had only to abstain from exercising the power in order to hold an absolute fee simple estate in the premises, and if she had retained possession until her death and made no appointment under the power, the property would have passed to her heirs or devisees, as the case might be, as her own estate.

But for the limitation over in default of appointment, it would have been a power *in trust*, and in that case if Mrs. Patterson had died without executing the power, the court would have divided the property among all the children equally. Hill Trust., '85–88 ; *Withers* v. *Yeadon*, 1 Rich. Eq., 325. The power in

such cases is held to extend only to the *selection* from, or distribution amongst, the class of objects; and in default of the exercise of the power they will be equally divided. It is considered a gift by implication to all the individuals of the class in default of being exercised. Hill Trust., 88, 89. But where there is an express limitation over in default of appointment, that will, of course, exclude the implication of any gift arising from the terms of the power itself. Hill Trust., 90; 2 Sudg. Pow., 105.

The testator here designated the children to whom *he* wishes the real estate to go, if his wife, to whom he had given a discretionary power, should fail to appoint, viz.: *to his sons;* and as to the personalty bequeathed, he desired the same, upon the failure of his wife to appoint, to go to *all* of his children. Such a disposition in default of appointment is wholly inconsistent with the idea that the power was in *trust* for all the children as a class, which in default of appointment could be enforced by the court in favor of the class by an equal division. It would be not a carrying out of the general intention of the testator, but, on the contrary, a defeat of his expressed intention that his *sons* should take if his wife failed to exercise the power, it not being a power in *trust*. It was a purely discretionary power, to be exercised or not, at the absolute option of Mrs. Patterson. The power in question was a power in gross or collateral as defined. 1 Sugd. Pow., 93; 4 Kent, 317. Such a power may be released or extinguished. 1 Sugd. Pow., 122, 128, 129, 130. The point, therefore, may be considered at rest. 4 Kent, 347; *Thorington* v. *Thorington*, 82 Ala., 489.

Mrs. Patterson could not have released to herself and thus extinguish the power while the fee remained in her, but she could have released to James Patterson when she sold and conveyed to him; and if she had executed to him a formal release of the power, the authorities cited are clear that the power would have become extinct. There being no trust, as has been seen, and the power being under her absolute control, none of the children could object to the release of it, or complain of the effect or consequence of such release. They had no rights whatever which could be asserted against her relinquishment of a power which she was free to exercise or not as she pleased. She sold the pre-

mises to James Patterson for value, $5,000. Her attempted exercise of the power to her son, Jabez Patterson, though ineffectual, manifested her desire to give James Patterson a title free of the power. Her deed to her son Jabez was a part of the transaction made at the same time, before the same witness, and was intended, through the joint conveyance made by her and the son, to accomplish that purpose. A technical formal release of the power to Patterson could not have evidenced the intention to extinguish the power in his favor more clearly than the execution of the deed to Jabez and the joint conveyance to James Patterson. It was tantamount to a release; and her attempted exercise of the power afterwards by her will was in derogation of her deed to James Patterson, under which Dowling claims. The Alabama case above cited, *Thorington* v. *Thorington,* is clearly in point.

Mrs. Patterson's intentions, being plainly manifested by her dealings with James Patterson, and the deeds executed, the effect should be considered the same as if a formal release of the power had at the time been executed to him. This evidently was her intention, for the sale of the premises to. James Patterson, the consideration being $5,000, the precise amount of Nott's legacy, was for the purpose of discharging the same. This will be readily seen when we consider that this was the only way of paying it, the personalty having all been dissipated or lost; that it was a family arrangement to relieve the estate from an expensive charge; that the money realized from the sale went to pay said legacy, but the same not being discharged in full, the said premises were again sold for the purpose of paying the balance thereon, and which is shown was paid from the sale to defendant Dowling.

These facts and circumstances create such rights in the defendant that it would be inequitable, to say the least of it, to consider the claims of plaintiffs, especially when it is remembered that had this legacy not been paid, even if it had to be in the manner it was, then not only would the premises herein have been liable, but also the 1,000 acres which by the appointment of their mother's will the plaintiffs and the defendant, Isabel C. Aldrich, are now in the undisturbed enjoyment of. Sweeping as are

27—33

the terms of her will, it would, in view of her transactions with
Patterson and her subsequent repurchase and conveyance to
Hagood and Brown, trustees, and the application of a part of
the proceeds, at least, even of the sale to Dowling, to the pay-
ment of the Nott legacy, be fair to conclude, which I do, that
she had no reference in her will to the property in question, but
to the large estate, 1.000 acres, over which she retained the power
and which has passed under the will to her daughters.

Under these grounds, therefore, the prayer of the plaintiffs
must be denied.   It is ordered, adjudged, and decreed, that the
complaint herein be and is hereby dismissed with costs.

From this decree the plaintiffs appealed upon numerous excep-
tions, which raised the points determined by this court.

*Messrs. W. A. Holman* and *J. B. Burckhalter*, for appellants.

Plaintiffs' exceptions suggest error in the three grounds upon
which the Circuit Judge dismissed the complaint.   Those grounds
are : I. He concludes that the power conferred upon Mrs. Pat-
terson was purely discretionary.   II. That she had released or
extinguished her power to make appointment as to the property
now in dispute, by her several deeds to Jabez B. Patterson and
James Patterson.   III. That inasmuch as she used a part of the
money arising from the sale of the "Patterson House" towards
paying the *Nott* legacy, that it makes it inequitable for the plain-
tiffs to interfere, and that the same, coupled with the above sales,
debars them now from a recovery.

I. Under the will of Angus Patterson, the sons took a vested
remainder subject to be defeated by the execution of the power.
4 Rich. Eq., 475 ; 28 S. C., 548.   This power was well exe-
cuted by Mrs. Patterson's will.   14 S. C., 528 ; 16 *Id.*, 558.
And thereupon the property vested in her appointees.   Bail.
Eq., 517 ; 9 Rich. Eq., 358, 411, 420 ; 2 Strob. Eq., 137 ; 2
T. R., 252 ; 2 Hill Ch., 214 ; 3 Am. & Eng. Encycl. L., 633 ;
28 S. C., 552 ; 2 Rich. Eq., 411.

II. The intention of the donor of the power must govern (19
S. C., 304), and that intention was that the power should be exe-
cuted only at the donee's death.   Chev. Eq., 35, 36 ; Wms. Real

P., § 311; 10 East., 456. The power conferred on Mrs. Patterson was a collateral one which cannot be released. 21 S. C., 1; 1 South. L. Times, No. 20; 2 Bouv. L. Dict., 357. If she could extinguish the whole power, she could not extinguish a part at a time. 2 Cowen, 195. Thorington *v.* Thorington, 82 Ala., 489, differs from this case. There was also an element of trust in this power. Perry Trust, § 254; Hill Trust, 69. It was expected that she would exercise it in behalf of needy members of the family. The deeds do not purport to be a release of the power. 6 N. E. Rep., 255.

III. No power was given to sell any portion of the estate to pay the Nott legacy.

*Messrs. Bates & Simms,* contra.

October 15, 1890. The opinion of the court was delivered by

MR. JUSTICE MCIVER. Angus Patterson died many years ago, leaving a will whereby he disposed of his estate, both real and personal, as follows: after certain pecuniary legacies, amongst which was one to his grandson, Angus P. Nott, of five thousand dollars, which should be a charge upon his entire real estate, he gave his real estate to his wife and three sons, Edward, Angus, and Jabez; "that is to say, one fourth part thereof to my wife during her life, and the other three-fourths parts unto my sons in perpetuity. On the death of my wife, I give, devise, and bequeath all the estate which she will have at the time of her death, or be entitled to under this my last will and testament, unto such of my children and grandchildren in such parts, parcels, and proportions, and upon such trusts, limitations, and conditions as my wife, by her last will and testament or other writing executed in the presence of three or more witnesses, shall direct and appoint; but if my wife shall fail or omit to execute a last will or testament or other writing upon her death," he bequeathed the personal estate to all his children, and devised the real estate to which his wife might then be entitled under the will, to his three sons. The testator in his will expressed the desire that so much of the income of his estate, over and above the support and education of his children, as might be necessary, at least to the

extent of fifteen hundred dollars, should be invested as a fund
for the payment of debts, legacies, and such other amounts as
the estate might be justly liable for.  It turned out, however,
that nothing was saved from the annual income over and above
the expense of maintaining the family and the education of the
children, up to the time of the commencement of the war between
the States, shortly before which the personal property was divid-
ed amongst the parties entitled thereto.

Some time in the year 1860, with a view to provide for the
payment of the legacy of $5,000 to the grandson, Angus P. Nott,
which was not payable until he attained the age of twenty-one
years, and which, as we have seen, was a charge upon the entire
real estate, an arrangement was made between the three sons,
Edward, Angus, and Jabez, and their mother, Mrs. Hannah
Patterson, the widow of the testator, whereby the former, in con-
sideration of the covenant hereinafter stated, conveyed to the lat-
ter the lots of land in the town of Barnwell, which are the sub-
ject matter of the present controversy, and Mrs. Hannah Patter-
son executed her covenant to them to assume the sole responsi-
bility for the payment of the said legacy when it should become
payable.  And with a view to raise the funds necessary to make
such payment, Mrs. Hannah Patterson bargained and sold the
said lots of land to one James Patterson for the sum of five thou-
sand dollars, taking his bond and mortgage to secure the payment
of the purchase money.

The title to said premises was made in the following way :
Mrs. Patterson first executed an instrument in writing, in which,
after reciting the said power of appointment, and declaring her
intention to exercise the same in the manner and form prescribed
by the will of her testator, she directed and appointed the re-
mainder in her undivided one-fourth life interest in the said pre-
mises, after the termination of her life estate, to the said Jabez
Patterson, his heirs and assigns, with full covenants of warranty,
to which paper, however, there appears to be only two subscrib-
ing witnesses; and on the same day she and the said Jabez
joined in a deed to the said James Patterson for the said premis-
es, conveying the same to him in fee, with full covenants of war-
ranty.  James Patterson having failed to pay in full the amount

due on his said bond and mortgage, the premises were sold under foreclosure proceedings, instituted about the time when the legacy to Nott became payable, and bought by Mrs. Hannah Patterson, who subsequently sold the same to certain trustees of a joint stock company, who sold to the defendant, J. C. Dowling.   It is conceded that the legacy to Angus P. Nott was paid in full by Mrs. Hannah Patterson out of the proceeds of the sales above mentioned.

Mrs. Hannah Patterson died in 1889, leaving a will, in which, after referring to the power of appointment conferred upon her by the will of her husband, she makes the following disposition : "I give, devise, and bequeath all my estate, including that which I have the power to dispose of, or will, under the will of my husband, and all which I have acquired, real, personal, and mixed, and now owned by me, or that I may hereafter acquire and own at the date of my death, to my four daughters, Isabel C. Aldrich, Lucretia Atkinson, Marion Trotti, and Julia May, share and share alike."   Three of these daughters, the plaintiffs herein, bring this action for partition of the lots of land above referred to—the fourth daughter, Mrs. Aldrich, declining to join as a plaintiff in this action, and for that reason being made a party defendant.   Their claim is based upon the ground that Mrs. Hannah Patterson having only a life estate in the one undivided fourth part of the premises, with a power of appointment of the remainder, after the termination of her life estate, and having exercised such power by her will duly executed in favor of her four daughters, they are therefore now, after the termination of Mrs. Patterson's life estate, entitled to the undivided fourth part of said premises, to be divided amongst them share and share alike.   Of course, this proceeds upon the theory that the attempted exercise of the power of appointment by Mrs. Patterson in favor of her son Jabez was not a valid exercise of the power, because the paper by which it was attempted was not executed in the presence of three witnesses, as required by the terms of the instrument creating the power ; and this seems to be conceded by respondent.

We may remark, however, in passing, that the will of Angus Patterson does not require that the power shall be exercised by

will or by an instrument in writing in the presence of three sub-
scribing witnesses, but the language is: "By her last will and
testament *or other writing* executed in the presence of three or
more witnesses." Now, if this language could be construed as
requiring the power to be exercised *by will only*, then it would
follow that three *subscribing* witnesses would be necessary, for
the statute requires that such a paper should be so executed. But
can the language be so construed? The words "or other writ-
ing" would seem to imply the contrary. If so, then the witness-
es required need not necessarily be subscribing witnesses, for the
testator has not said so, and the law would not so imply, if the
donee of the power saw fit to exercise it by some other writing
than a will. It is very manifest from the terms of the paper in
which Mrs. Patterson undertook to exercise her power of appoint-
ment in favor of her son Jabez (a copy of which is set out in the
"Case"), that she fully intended to make a valid exercise of her
power in strict conformity to the directions of the donor of the
power; for, after reciting the terms of her husband's will creating
the power, she declares that by virtue of the power of appoint-
ment thus conferred she does, "by this writing executed in the
presence of three witnesses, direct, limit, and appoint," &c.

This paper, then, containing in itself the evidence that it was
executed in the presence of the requisite number of witnesses,
might possibly be regarded as a valid execution of the power,
even though there appears to be only two subscribing witnesses
to the paper. Although this would seem to be a very rigid and
narrow view, yet when we find that eminent jurist, Kent, in the
4th volume of his Commentaries, at pages 324–5, saying: "It is
the plain and settled rule that the conditions annexed to the ex-
ercise of the power must be strictly complied with, however unes-
sential they might have been, if no such precise directions had
been given. They are incapable of admitting any equivalent or
substitution, for the person who creates the power has the un-
doubted right to create what checks he pleases to impose to guard
against a tendency to abuse. The courts have been uniformly
and severely exact upon this point. * * * When there are sev-
eral modes of executing a power, and no directions are given, the
donee may select his mode, and the courts seldom require any

formalities in the execution of the power *beyond those required by the strict letter of the power*" (italics ours) ; and when we find the same author speaking in the next paragraph of "the excessive and scrupulous strictness required," especially with respect to the attestation of instruments of appointment, &c., a Court of Equity might be warranted in adopting an extremely literal construction of the language used by the donor of a power, in order to carry into effect the manifest intention of the parties and to subserve the ends of justice.

But waiving this, as the point was not made or argued, we will proceed to consider the case upon the assumption that the paper just considered was not a valid execution of the power. It will be necessary, then, to inquire, first, what was the nature of the power conferred upon Mrs. Patterson by the will of her husband. Without going into any elaborate dissertation upon the nature of powers, or the several classes into which they have been arranged by the various law writers upon the subject, it is sufficient for us to say that we think the power here in question falls into the class designated in the books as a power "collateral or in gross"—a somewhat singular designation, it is true. In Sugden on Powers, 46, a power of that class is defined to be a power "given to a person * * to whom an estate is given by the deed, but which enables him to create such estates only as will not attach on the interest limited to him," and one of the illustrations given is "a power to a tenant for life to appoint the estate after his death amongst his children," and the same definition and illustration are substantially adopted in 4 Kent Com., 311. It is quite clear that the power here in question comes precisely up to this definition, for by the will of Angus Patterson—the instrument creating the power—an estate is given to Mrs. Patterson for her life, accompanied with a power to create other estates, which would not attach on the interest limited to her, or, as Kent expresses it, estates independent of her own ; and it falls precisely under the illustration, for she is made a tenant for life, with power to appoint the remainder after the termination of her life estate amongst such of her children and grandchildren as she might think proper. Such a power can unquestionably, as a

general rule, be released or extinguished by the act of the donee. Sugd. Pow., 73.

But where such a power is coupled with a trust, we suppose it would be otherwise. Thus where an estate for life is given by will to one with power to appoint the remainder after the termination of his life estate amongst the children, and there is no limitation over upon the failure to exercise the power, there a trust will be implied in favor of the children, and the court will make the appointment amongst the children equally. But where there is a limitation over, upon the failure to exercise the power, no such trust can be implied, for the reason that it would defeat the intention of the testator. Where there is no limitation over, the power given to the life tenant to appoint the remainder amongst the children of such life tenant, is regarded as expressive of an intention on the part of the testator that such remainder should go to the children of the donee of the power in such shares as he might see fit to designate, but in the absence of any such designation by a failure to exercise the power, the intention of the testator that the children should have the remainder would be respected and the same would be equally divided amongst them.

Thus in *Withers* v. *Yeadon* (1 Rich. Eq., at page 331), it is said: "When the testator gave his son a power to appoint among his grandchildren as he might choose, he in effect signified his wish that some of his grandchildren should have the benefit of his property, it being indifferent to him, though possibly not indifferent to his son, which. The substance of the power then was to enable his son to make an inequality among persons all standing in equal favor with the testator; in plain terms, to enable him to disappoint, to some extent, persons to whom the testator would, but from motives of deference to his son, have made an equal appointment. The cases show that, under such circumstances, when the power given is not executed, the court will return to the forefather, and conform the bounty to the original state of his affections." But where there is a limitation over, upon the failure to exercise the power, there is no occasion for or propriety in resorting to inference as to the intentions of the testator; for he has declared his intention in such event in

explicit terms, and to imply a trust in such a case would defeat his declared intention. There being a valid limitation over in this case, it is clear there was no implied trust coupled with the power. Mrs. Patterson was under no obligation to exercise the power, but might, if she saw fit, fail or refuse to do so. The testator manifestly contemplated the event of her failing to exercise the power, and specially declared what should be the disposition of the remainder in such event, and hence there was no ground upon which a trust could be implied.

If, then, the power in this case was of such a character as that it could be released or extinguished by the act of the donee of the power, the next question is, whether it was in fact released or extinguished. We know of no law which requires that such a release should be evidenced by any particular form of writing. Any evidence, therefore, which satisfactorily proves the fact is sufficient. We cannot doubt that the evidence in this case is amply sufficient to show that Mrs. Patterson did intend to release and did in fact release and extinguish her power of appointment, so far as the lots here in question are concerned. Any other view would, it seems to us, necessarily involve the idea that she intended to commit a fraud—an idea which cannot for a moment be entertained. It is admitted in the "Case" that the sale of these lots was made with a view to raise the funds necessary to pay the Nott legacy, for which Mrs. Patterson had assumed the sole responsibility, in consideration of a conveyance to her by her sons of their interests in remainder in these lots, and that the proceeds of such sale were applied to that purpose, thereby relieving the balance of the real estate from the burden of that charge. She joined in conveying the absolute fee to James Patterson, with full covenants of warranty, and, to say nothing of the paper by which she undertook to exercise her power of appointment in favor of her son Jabez, which was manifestly designed solely for the purpose of perfecting the title to the lots, we do not see how she could more clearly have expressed her intention to release her power of appointment, so far as these lots were concerned, or how she could more effectually have extinguished such power.

Indeed, but for the fact that the weight of English authority (for there seems to be none in this State upon this point) is said

to be the other way, we would be inclined to hold that when the remaindermen in fee conveyed to her their interests in these lots, she then holding the life estate, she became the absolute owner in fee, and her power of appointment as to the remainder, not being coupled with any trust, was merged in her general and absolute power over the estate by virtue of her ownership of the fee. But as it is not necessary to the decision of this case, we will not now undertake to decide the point.

It is contended, however, that even if Mrs. Patterson had the right to release her power of appointment as a whole, she could not release as to a part and retain the balance. When one is invested with a power to appoint the disposition of several distinct pieces of property, we do not see why the donee of the power may not exercise it as to one of the pieces and omit to exercise it as to the others. For example, if there had never been any sale of the lots in question, we see no reason why Mrs. Patterson could not have appointed the same to the use of one or more of her daughters and omitted to make any appointment as to the 1,000 acres, the balance of the real estate, or why she may not have appointed these lots to the use of two of her daughters, and have appointed the 1,000 acres to the use of her other two. Upon the same principle, we see no reason why she could not release her power to appoint as to one of these pieces of property and exercise it as to the other.

We agree, therefore, with the Circuit Judge, that Mrs. Patterson's will, though expressed in broad terms, must be construed as expressive of an intent on her part to exercise her power of appointment only over that portion of the property over which she retained the power, she knowing, and the public records showing to the world, that she had previously relinquished her power to appoint as to the lots here in controversy.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.