### STOFFREGEN v. MOORE, Internal Revenue Collector.

(District Court, E. D. Missouri, E. D.    March 26, 1920.)

No. 4673.

Internal revenue ☞7—"Income" includes dividends paid from accumulated surplus.

Under Income Tax Act Oct. 3, 1913, § 2, the "income" of a stockholder of a corporation includes dividends received by him during a tax year, although declared and paid in whole or in part from the accumulated surplus of prior years.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

At Law. Action by Charles Stoffregen against George H. Moore, Collector of Internal Revenue. Trial to court. Judgment for defendant.

Jourdan, Rassieur & Pierce and John M. Goodwin, all of St. Louis, Mo., for plaintiff.

Benj. L. White, Asst. U. S. Atty., and A. L. Boulware, Sp. Asst. U. S. Atty., of Washington, D. C., for defendant.

FARIS, District Judge. Plaintiff sued defendant, as collector of internal revenue of the United States for the First district of Missouri to recover the sum of $9,678.54 paid by plaintiff under protest as income tax for the year 1913. There is no dispute about the facts, which in brief substance run thus:

Plaintiff and one Steinwender, long partners in business in the city of St. Louis, as dealers in coffees, teas, and spices, incorporated their business under the laws of Missouri in 1896, and said business ever since has been and now is a corporation of Missouri under the name and style of Steinwender-Stoffregen Coffee Company (hereafter I shall refer to this corporation simply as the company). When incorporated, the capital stock of the company was $150,000, divided into 1,500 shares of the par value of $100 each. Of these shares, Steinwender owned 750, plaintiff owned 749, and one Carl Stoffregen, the son of plaintiff, owned 1. These three persons constituted all of the shareholders and directors of the company till June, 1912, when Steinwender died. In September, 1913, plaintiff purchased the interest of Steinwender in the company, under orders duly made by the probate court of the city of St. Louis. Plaintiff paid for this Steinwender interest the full book value thereof, to wit, $339,380.02, in cash.

After the death of Steinwender, but before the purchase by plaintiff of the interest of the former's estate in the company, and on October 3, 1913, the Income Tax Act, under which the defendant collected the money in controversy, took effect, as of March 1, 1913. Act Oct. 3, 1913, 38 Stat. 166, c. 16, § 2. From the year 1898 until December 26, 1913, the company declared no dividends whatever, but carried its annual earnings on its books to the credit of the surplus account. On December 1, 1912, which date seems to have been the end of the company's fiscal year, this surplus account amounted to $569,111, omitting odd cents as unnecessary to this statement or to the argument. On December 1, 1913, this surplus had grown to $631,826, thus showing the company's income for its fiscal year 1913 to have been $62,715.

In December, 1913, for a reason not particularly pertinent here (but which may be briefly stated as the desire of plaintiff to reward certain faithful employés with an interest in the company), the capital stock of the company was increased from the original 1,500 shares to 5,000 shares, likewise of the par value of $100 each. In order to put these new shareholders on an equality with plaintiff and his son, who were then the owners of all of the original stock of the company, the company declared a dividend of all existing surplus, amounting then, as already stated, to the sum of $631,826, and passed this dividend to the credit of the plaintiff on the books of the company. This surplus was then represented almost wholly by goods, wares, and merchandise upon the shelves and in the warehouses of the company, and by solvent accounts and bills receivable, it is to be assumed, since it then had only

some $3,000 in cash on hand. Against this credit, so transferred to plaintiff on the books of the company, there was at once made a charge of $350,000, being the aggregate of the amounts advanced by plaintiff as loans made by him to the new shareholders, in order that the latter might acquire shares in the company. The balance of this dividend, so credited to plaintiff, as above stated, was subsequently, and at some indefinite time prior to June, 1915, paid to him by the company presumably in cash.

Thus, in brief, run so many of the facts as I deem pertinent to the contentions made, respectively, by plaintiff and the defendant. Substantially the contention of the plaintiff is that he is bound by the provisions of the Income Tax Act, supra, to pay a tax only on such income as accrued to him from his part of the earnings of the company after the 1st day of March, 1913. The defendant contends that plaintiff is bound to pay an income tax on the whole of the surplus of the company which was transferred to the credit of plaintiff on December 26, 1913, to wit, $631,826, less, of course, the sum in cash paid by plaintiff to the estate of Steinwender for the interest in the company of the latter, to wit, the sum of $339,380. The exact figures I do not regard as material, for upon the trial it seems to have been assumed that the sum exacted from plaintiff was the correct amount due from him, if he was by law subject to pay a tax on this dividend at all. Likewise, therefore, it seems to have been assumed that, if plaintiff is entitled to recover at all, the sum sued for is the correct sum due to him. The question, in short, is: Does the dividend declared to plaintiff, and transferred to his credit in the mode stated, constitute such income as is taxable by the act of October 3, 1913?

By the provisions of this act there is assessed an income tax "upon the entire net income arising or accruing from all sources in the preceding calendar year to every * * * person residing in the United States * * * a [normal] tax of one per centum per annum." Paragraph A, subdivision 1, Act October 3, 1913, 38 Stat. 166, c. 16. If this dividend to plaintiff did not constitute income, within the purview of the language of the statute above quoted, plaintiff ought to have judgment for the amount claimed by him. If it did constitute such income, then the judgment ought to be for the defendant.

By subsequent provisions of the Income Tax Act "net income," as used in the act, is defined thus:

"The net income of a taxable person shall include gain, profits, and income derived from * * * dividends * * * derived from any source whatever." Section 2, par. B, c. 16, 38 Stat. 167.

Construing the above provisions of the Income Tax Act, the Supreme Court of the United States in the case of Lynch v. Hornby, 247 U. S. loc. cit. 344, 38 Sup. Ct. 545, 62 L. Ed. 1149, said:

"Hence we construe the provision of the act that 'the net income of a taxable person shall include gains, profits, and income derived from * * * interest, rent, dividends, * * * or gains or profits and income derived from any source whatever' as including (for the purposes of the additional tax) all dividends declared and paid in the ordinary course of business by a corporation to its stockholders after the taking effect of the act (March

1, 1913), whether from current earnings, or from the accumulated surplus made up of past earnings or increase in value of corporate assets, notwithstanding it accrued to the corporation in whole or in part prior to March 1, 1913. In short, the word 'dividends' was employed in the act as descriptive of one kind of gain to the individual stockholder; dividends being treated as the tangible and recurrent returns upon his stock, analogous to the interest and rent received upon other forms of invested capital."

Again in this same case the Supreme Court of the United States, in discussing the intention of Congress not to tax surplus which was not distributed, unless fraudulently accumulated for the purpose of evading the tax, said:

"This treatment of undivided profits applies only to profits permitted to accumulate after the taking effect of the act, since only with respect to these is a fraudulent purpose of evading the tax predicable. Corporate profits that accumulated before the act took effect stand on a different footing. As to these, however, just as we deem the legislative intent manifest to tax the stockholder with respect to such accumulations only if and when, and to the extent that, his interest in them comes to fruition as income, that is, in dividends declared, so we can perceive no constitutional obstacle that stands in the way of carrying out this intent when dividends are declared out of a pre-existing surplus. The act took effect on March 1, 1913, a few days after the requisite number of states had given approval to the Sixteenth Amendment, under which for the first time Congress was empowered to tax income from property without apportioning the tax among the states according to population. Southern Pacific Co. v. Lowe [247 U. S. 330, 38 Sup. Ct. 540, 62 L. Ed. 1142], supra. That the retroactivity of the act from the date of its passage (October 3, 1913) to a date not prior to the adoption of the amendment was permissible is settled by Brushaber v. Union Pacific R. R. Co., 240 U. S. 1, 20 [36 Sup. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713]. And we deem it equally clear that Congress was at liberty under the amendment to tax as income, without apportionment, everything that became income, in the ordinary sense of the word, after the adoption of the amendment, including dividends received in the ordinary course by a stockholder from a corporation, even though they were extraordinary in amount and might appear upon analysis to be a mere realization in possession of an inchoate and contingent interest that the stockholder had in a surplus of corporate assets previously existing. Dividends are the appropriate fruit of stock ownership, are commonly reckoned as income, and are expended as such by the stockholder without regard to whether they are declared from the most recent earnings, or from a surplus accumulated from the earnings of the past, or are based upon the increased value of the property of the corporation. The stockholder is, in the ordinary case, a different entity from the corporation, and Congress was at liberty to treat the dividends as coming to him ab extra, and as constituting a part of his income when they came to hand." Lynch v. Hornby, 247 U. S. loc. cit. 343, 38 Sup. Ct. 545, 62 L. Ed. 1149.

I am constrained to conclude that the better view is that this case is ruled by Lynch v. Hornby, supra, and not by the cases of Lynch v. Turrish, 247 U. S. 221, 38 Sup. Ct. 537, 62 L. Ed. 1087, and Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 Sup. Ct. 540, 62 L. Ed. 1142. It is true that it is not precisely upon all of its facts on all fours with the Hornby Case; but it likewise has distinguishing features of dissimilarity from the Turrish Case and the Lowe Case. See, also, Peabody v. Eisner, 247 U. S. 347, 38 Sup. Ct. 546, 62 L. Ed. 1152.

Since this is a jury-waived case at law, I have deemed it wise and fair that an expression of my views should be given thus formally in

the guise of conclusions of fact and law, so as to afford, in the absence of requests for declarations of law, a basis for review, should a review be desired.

Let judgment be rendered for defendant, with costs.