16108

WESTON *ET AL.* v. SOUTH CAROLINA TAX COMMISSION
(48 S. E. (2d) 504)

*Messrs. Sinkler & Gibbs,* of Charleston, for Appellants,

*Messrs. John M. Daniel,* Attorney General, and *Claude K. Wingate,* Assistant Attorney General, of Columbia, for Respondent,

*Messrs. Sinkler & Gibbs,* of Charleston, for Appellants, in reply.

July 15, 1948.

STUKES, J.: George E. Gibbon of Charleston died January 4, 1931, leaving his will, which was dated December 1, 1917, whereby he gave his large estate to his widow, Mary W. Gibbon, for life, with power to her to appoint the whole or any part of the property to such person or persons as she should see fit, either by deed or by will, and in default of the exercise of the power, remainder after her death to her and testator's daughter, Maud W. Gibbon. Mr. Gibbon's will was probated in Charleston County on January 10, 1931, and Mrs. Gibbon qualified as executrix. The assets of the estate were appraised in the Probate Court at approximately $254,000.00.

On June 11, 1943, Mrs. Gibbon executed an instrument wherein she recited by way of preamble the applicable provision of her husband's will and that, quoting, "the provisions of the Federal Revenue Act of 1942 [26 U. S. C. A. Int. Rev. Acts] make it desirable that the power of appointment * * * be released in part, as authorized by said Act"; and that the estate was invested in bonds and securities, some of which may have been registered in her name individually, and they, with securities of her own, were in a lock box in a Charleston bank. The document then proceeded as follows: "Now, Know All Men By These Presents That I, Mary Winthrop Gibbon, hereby irrevocably release, abandon and surrender the Power of Appointment conferred upon me by the Will of my husband, George E. Gibbon, to the extent of One Hundred Fifty Thousand ($150,000.00) Dollars of the residue of his Estate, reserving unto myself the right to exercise said power on all of the residue of the Estate of the said George E. Gibbon as may exceed the som of One Hundred Fifty Thousand ($150,000.00) Dollars." The attestation, execution and witnessing of the instrument were in the form usual in a deed and it was also probated in similar manner, the probate ineptly referring to it as a "Partial Release of Lien."

On the date of the execution of the foregoing instrument Mrs. Gibbon also made her will whereby she bequeathed to a friend her wedding ring and the sum of $500.00, and disposed of the bulk of her individual estate and the balance of her husband's by Item III, as follows: "All the rest, residue and remainder of my estate, including and to include any interest in the residue of the Estate of my husband, the late George E. Gibbon, which interest will be disclosed by reference to said Will, which is of record in the Office of the Probate Court for Charleston County, which I may not have released from the Power of Appointment given me under his Will, or which I may not have disposed of dur-

ing my life, I give, devise, bequeath and appoint unto my daughter, Maud W. Gibbon, absolutely and forever."

After Mrs. Gibbon's death in June, 1947, the South Carolina Tax Commission proceeded to assess the estate for the purpose of inheritance taxation pursuant to Sections 2480-2504, Code of 1942, and issued its certificate, No. 10319, dated March 30, 1948, whereby the tax was fixed at $15,-104.22, being composed of $15.00 against the legatee-friend and $15,089.22 against Maud W. Gibbon, the daughter of testatrix. In the proceedings before the Commission the executors of the will of Mrs. Gibbon insisted that the sum of $150,000.00 should be deducted from the gross valuation of the estate, which was $418,536.76, which would leave $268,536.76; and that the last stated sum and the sum of $150,000.00 should be separately assessed and taxed, which would make a substantial difference in the amount of the aggregate taxes because of the graduated rates. The Commission refused the contention upon the grounds that the attempted partial release was unauthorized under the law of this State and that even if it were effective it should not affect the assessment for inheritance tax purposes which should be upon the aggregate of all of the estate which passed as the result of the death of Mrs. Gibbon.

From this decision the executors took timely appeal to this Court pursuant to the provisions of Section 2493 of the Code. The exceptions present the contention of appellants that, as they state it, the tax should have been computed separately on (1) what Maude W. Gibbon received as the result of the "partial release" of the power of Appointment, and (2) what she received under the will of her mother, Mary W. Gibbon. The appeal is meritorious and will be sustained for the reasons which will be stated.

Miss Gibbon took $150,000.00 under her father's will by way of remainder after the life tenancy of her mother. The rest of the estate of her father she took by the appointment

contained in her mother's will which was authorized by the power provided to her mother by her father's will. Thus there were two separate inheritances by the daughter and they should have been so assessed. The Commission argues to the contrary the alleged invalidity of the partial release of the power of appointment because, forsooth, it was partial instead of complete.

The will of Mr. Gibbon, which created the power, expressly contemplated and authorized a partial appointment which is more than the precedents require. Clearly, the intent of the creator of the power governs. *Fronty v. Godard,* 1833, Bailey Eq. 517. Here it is unmistakable. The well chosen words of the will are: "with full power to appoint the whole or any part or parts of the same," etc. The power was thus expressly divisible; it could undoubtedly be exercised in part. Such, in effect, was upheld without express provision in *Fronty v. Godard, supra,* and in *Deveaux v. Barnwell,* 1796, 1 Desaus. 497. Why then, was it not similarly subject to partial release? No sound reason is apparent why it was not. In the cases just cited effect was given the exercise in part of a power, that is, the exercise of the power with respect to a part of the property subject to it. As to the balance of the property subject to the unexercised power there was an implied release or relinquishment. In the case now before us the release was express. Should it on that account be less effective? We think not. Rather, we think, it should be more readily given effect because of its formality. And such was the result of the comparatively modern authority of *Atkinson v. Dowling,* 1890, 33 S. C. 414, 12 S. E. 93, opinion by Justice McIver, which leaves no doubt of the rule of the decisions of our court. That case is cited approvingly in *Lyon v. Alexander,* 1931, 304 Pa. 288, 156 A. 84, 76 A. L. R. 1427, which is reported and followed by a valuable annotation in 76 A. L. R. 1430. There, as here, a general power of appointment was involved. The following is from the opinion in the *At-*

*kinson-Dowling case,* where there was no express authorization of a partial execution of the power, as here there is, and no express provision for a partial release [33 S. C. 414, 12 S. E. 96] :

"It is contended, however, that even if Mrs. Patterson had the right to release her power of appointment as a whole, she could not release as to a part, and retain the balance. When one is invested with a power to appoint the disposition of several distinct pieces of property, we do not see why the donee of the power may not exercise it as to one of the pieces, and omit to exercise it as to the others. For example, if there had never been any sale of the lots in question, we see no reason why Mrs. Patterson could not have appointed the same to the use of one or more of her daughters, and omitted to make any appointment as to the 1,000 acres, the balance of the real estate, or why she may not have appointed these lots to the use of two of her daughters, and have appointed the 1,000 acres to the use of her other two. Upon the same principle we see no reason why she could not release her power to appoint as to one of these pieces of property, and exercise it as to the other. We agree therefore with the circuit judge that Mrs. Patterson's will, though expressed in broad terms, must be construed as expressive of an intent on her part to exercise her power of appointment only over that portion of the property over which she retained the power, she knowing, and the public records showing to the world, that she had previously relinquished her power to appoint, as to the lots here in controversy."

There is a brief discussion of the releasability (and the manner thereof) of powers of appointment in 41 Am. Jur. 874 *et seq.,* Powers, Sec. 95 *et seq.*

We conclude that by execution of the instrument of June 11, 1943, Mrs. Gibbon validly relinquished the power of appointment vested in her with respect to $150,000.00 of

the property which passed to her for life under the will of her husband. That amount became an inheritance which accrued to Miss Gibbon at that time, subject to the life estate therein which was vested in her mother. The terms of subdivision (d) of Sec. 2480 of the Code applied. That section provides that the exercise of a power of appointment of property shall be deemed a taxable transfer at the time of such exercise, the same as if the property so disposed of were that of the donee of the power and was bequeathed or devised by the latter's will; that when the donee of a power shall omit or fail to exercise it, in whole or in part, it shall constitute a taxable transfer of property and this provision shall apply, quoting the statute, "at the time of such omission or failure." The time in this case was June 11, 1943, when Mrs. Gibbon executed the release of the power to the extent of $150,000.00. Under the statute as written Miss Gibbon then became subject to, and liable for the payment of, the taxes imposed. A State inheritance tax was levied upon the exercise of a power over realty by deed *inter vivos* in *Re Wendel,* 223 N. Y. 433, 119 N. E. 879, 5 A. L. R. 177. Here we have release or relinquishment of the power by deed, which we think quite analogous; the result, under the circumstances of this case, is identical.

It is of no concern to this State or to this Court that some advantage may also accrue to the taxpayer under the applicable Federal law, which is indicated by the recital in the release of June 11, 1943. Our prerogative in such a case as this is to apply the State laws which are applicable to the adjudication of the controversy presented, without regard to the Federal law. *Gable v. Tax Commission,* 189 S. C. 346, 1 S. E. (2d) 244. And if the result here accomplished by the Gibbons has thwarted the unexpressed intention of the framers of the tax statutes, the remedy lies exclusively in legislative amendment which is, of course, beyond the sphere of the court. However, we think the provisions of the cited statute are too plain to

admit of controversy concerning the pertinent legislative intent.

The order of the Tax Commission is reversed and the matter remanded to it for further proceedings consistent with the views herein expressed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.