# LYNCH, COLLECTOR OF INTERNAL REVENUE FOR THE DISTRICT OF MINNESOTA, *v.* TURRISH.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 421.  Argued March 4, 5, 6, 1918.—Decided June 3, 1918.

Due to gradual increase in the market value of timber lands owned by a corporation, the market value of its shares had increased to twice par value by March 1, 1913, when the Income Tax Act of that year took effect. Afterwards the company sold all its property and made

final distribution of the proceeds to the shareholders on surrender of their certificates of stock, the amount received by each being twice the par value of his shares but, representing no increase since the effective date of the act. *Held,* that the value thus received in excess of par was not "income, gains, or profits" of a shareholder, subject to the tax, (a) because it represented merely a conversion of his existing investment, (b) because it did not "arise" or "accrue" after the act became effective.

236 Fed. Rep. 653, affirmed.

THE case is stated in the opinion.

*The Solicitor General,* with whom *Mr. Wm. C. Herron* was on the brief, for petitioner.

*Mr. A. W. Clapp,* with whom *Mr. N. H. Clapp, Mr. H. Oldenburg* and *Mr. H. J. Richardson* were on the brief, for respondent.

*Mr. Robert R. Reed,* by leave of court, filed a brief on behalf of the Investment Bankers' Association of America, as *amicus curiæ.*

MR. JUSTICE McKENNA delivered the opinion of the court.

Suit to recover an income tax, paid under protest, assessed under the Act of October 3, 1913, 38 Stat. 166.

The facts, as admitted by demurrer, are these: Respondent, Turrish, who was plaintiff in the trial court, made a return of his income for the calendar year 1914 which showed that he had no net income for that year; afterwards the Commissioner of Internal Revenue made a supplemental assessment showing that he had received a net income of $32,712.08, which, because of specific deductions and exemptions, resulted in no normal tax, but as the net income exceeded the sum of $20,000 the Commissioner assessed an additional or super-tax of one per cent. upon the excess, resulting in a tax of $127.12,

which was sought to be recovered. The reassessment was based upon certain sums received by the plaintiff in the year 1914 as distributions from corporations subject to the Income Tax Law and held by the Commissioner to be income derived from dividends received by the plaintiff on stock of domestic corporations; of which the sum of $79,975, received as a distribution from the Payette Lumber & Manufacturing Company, and without which no tax could have been levied against the plaintiff, is here in dispute.

Prior to March 1, 1913, and continuously thereafter until the surrender of his stock as hereinafter mentioned, plaintiff was a stockholder in the Payette Company, which was organized in the year 1903 with power to buy, hold, and sell timber lands, and in fact never engaged in any other business than this except minor business incidental to it. Immediately after its organization this company began to invest in timber lands, and prior to March 1, 1913, had thus invested approximately $1,375,000.

On March 1, 1913, the value of its assets was not less than $3,000,000, of which sum the value of the timber lands was not less than $2,875,000. The increase was due to the gradual rise in the market value of the lands. At that date the value of Turrish's stock was twice its par value, or $159,950.00, and about that time he and all the other stockholders gave an option to sell their stock for twice its par value. The holders of the option formed another company, called the Boise Payette Lumber Company, and transferred the options to it. The options having been extended to December 31, 1913, the new company informed the Payette Company and its stockholders shortly before this date that instead of exercising the option it preferred and proposed to purchase all of the assets of the Payette Company, paying to that company such a purchase price that there would be

available for distribution to its stockholders twice the par value of their stock. The stockholders by resolution authorized this sale, and, pursuant to this and a resolution of the directors, the Payette Company transferred to the new company all of its assets, property, and franchises, and upon the completion of the transaction found itself with no assets or property, except cash to the amount of double the par value of its stock which had been paid to it by the new company, and with no debt, liabilities, or obligations except those which the new company had assumed. The cash was distributed to the stockholders on the surrender of their certificates of stock, and the company went out of business. In this way, upon the surrender of his shares, Turrish received $159,950, being double their par value.

The Commissioner of Internal Revenue considered that of this sum one-half was not taxable, being the liquidation of the par value of Turrish's stock, but that the other half was income for the year 1914 and taxable under the Act of 1913.

The question in the case is thus indicated. The District Court took a different view from that of the Commissioner of Internal Revenue and therefore overruled the demurrer to Turrish's complaint and entered judgment for him for the sum prayed, which judgment was affirmed by the Circuit Court of Appeals for the Eighth Circuit. 236 Fed. Rep. 653.

The point in the case seems a short one. It, however, has provoked much discussion on not only the legal but the economic distinction between capital and income and by what processes and at what point of time the former produces or becomes the latter. And this in resolution of a statute which concerns the activities of men and intended, it might be supposed, to be without perplexities and readily solvable by the off-hand conceptions of those to whom it was addressed.

The provisions of the act, so far as material to be noticed, are the following: That there is assessed "upon the entire net income arising or accruing from all sources in the preceding calendar year to every . . . person residing in the United States . . . a tax of 1 per centum per annum upon such income. . ." Par. A, subdiv. 1.

In addition to that tax, which is denominated the normal income tax, it is provided that there shall be levied "upon the net income of every individual an additional tax . . . of 1 per centum per annum upon the amount by which the total net income exceeds" certain amounts, and the person subject to the tax is required to make a personal return of his total net income from all sources under rules and regulations to be prescribed by the Commissioner of Internal Revenue. Subdiv. 2.

By Paragraph B it is provided that, subject to certain exemptions and deductions, "the net income of a taxable person shall include gains, profits, and income derived from salaries, wages, or compensation for personal service . . . also from interest, rent, dividends, securities, or the transaction of any lawful business carried on for gain or profit, or gains or profits and income derived from any source whatever."

After specifying the exemptions and deductions allowed, the law declares as follows:

"The said tax shall be computed upon the remainder of said net income of each person subject thereto, accruing during each preceding calendar year ending December thirty-first: *Provided, however,* That for the year ending December thirty-first, nineteen hundred and thirteen, said tax shall be computed on the net income accruing from March first to December thirty-first, nineteen hundred and thirteen, both dates inclusive . . ." Par. D.

It will be observed, therefore, that the statute levies a normal tax and an additional tax upon net incomes,

derived from whatever source, "arising or accruing" each preceding calendar year ending December 31, except that for the year ending December 31, 1913, the tax shall be computed on the net income accruing from March 1, 1913, to December 31, 1913.

And in determining the application of the statute to Turrish we must keep in mind that on the admitted facts the distribution received by him from the Payette Company manifestly was a single and final dividend in liquidation of the entire assets and business of the company, a return to him of the value of his stock upon the surrender of his entire interest in the company, and at a price that represented its intrinsic value at and before March 1, 1913, when the act took effect.

The District Court and the Circuit Court of Appeals decided that the amount so distributed to Turrish was not income within the meaning of the statute, basing the decision on two propositions, as expressed in the opinion of the Circuit Court of Appeals, by Sanborn, Circuit Judge,—(a) The amount was the realization of an investment made some years before, representing its gradual increase during those years, and which reached its height before the effective date of the law, that is, before March 1, 1913, and the mere change of form of the property "as from real to personal property, or from stock to cash" was not income to its holders because the value of the property was the same after as before the change; (b) The timber lands were the property, capital and capital assets of their legal and equitable owner and the enhancement of their value during a series of years "prior to the effective date of an income tax law, although divided or distributed by dividend or otherwise subsequent to that date, does not become income, gains, or profits taxable under such an act."

For proposition "a" the court cited *Collector* v. *Hubbard*, 12 Wall. 1; *Bailey* v. *Railroad Company*, 22 Wall.

604, and the same case in 106 U. S. 109. For proposition "b" *Gray* v. *Darlington*, 15 Wall. 63, was relied on.

The Government opposes both contentions by an elaborate argument containing definitions of capital and income drawn from legal and economic sources and given breadth to cover a number of other cases submitted with this. The argument, in effect, makes any increase of value of property income, emerging as such and taxable at the moment of realization by sale or some act of separation, as by dividend declared or by distribution, as in the instant case.

To sustain the argument these definitions are presented: "1. Capital is anything, material or otherwise, capable of ownership, viewed in its static condition at a moment of time, or the rights of ownership therein. 2. Income is the service or return rendered by capital during a period of time. . . 4. Net income ('profits') is the difference between income and outgo. . . 7. In the actual production and distribution of capital there is a constant conversion of capital into income, and *vice versa*. 8. The attempt to conceal this conversion by treating 'income' as the standard return from intact 'capital' only leads to confusion of the value of capital with capital itself."

From these definitions are deduced the following propositions, which are said to be decisive of the problems in the cases:

"1. Income being derived from the use of capital, the conversion or transfer of capital always produces income. 2. Mere appreciation of capital value does not produce 'income,' nor mere depreciation 'outgo.' 3. Net income is the difference between *actual* 'income' and *actual* 'outgo.' 4. Income is not confined to money income, but includes anything capable of easy valuation in money."

It will be observed that the breadth of definition and

the breadth of application are necessary to the refutation of the reasoning of the Circuit Court of Appeals. There is direct antagonism, the court basing its reliance, it says, upon what it asserts is the common sense and understanding of the words of the law, and the exposition of like laws by the decisions of this court. The Government's resource is the discussion of economists and the fact, concrete and practical, of wealth not only increased but come to actual hand. The instant case is an example. Turrish's stock doubled in value. He paid for it $79,975.00; he received $159,950.00. It requires a struggle to resist the influence of the fact, but we are aided and fortified by our own precedents and saved from much intricate and subtle discussion and an elaborate review of other cases cited in confirmation or opposition.

In *Collector* v. *Hubbard, supra,* the distinction between a corporation and its stockholders was recognized and that the stockholder had no title for certain purposes to the earnings of the corporation, net or other, prior to a dividend being declared, but they might become capital by investment in permanent improvements and thereby increase the market value of the shares, "whether held by the original subscribers or by assignees." In other words, it was held that the investments of the corporation were the investments of the stockholders; that is, its stockholders could have an interest, taxable under the act considered, though not identical with the corporation. This was repeated in *Bailey* v. *Railroad Company,* 22 Wall. 604, 635, 636.

The latter case came here again in 106 U. S. 109, and it was then declared that the purpose of an income tax law was to tax the income for the year that it accrued; in other words, no tax in contemplation of the law accrues upon something except for the year in which that something—earnings, profits, gains or income—accrues. In that case the subject of the tax was a scrip dividend, but

the certificates did not show the year of the earnings and testimony as to the particular year was admitted. The principle applies to the case at bar. If increase in value of the lands was income, it had its particular time and such time must have been within the time of the law to be subject to the law, that is, it must have been after March 1, 1913. But, according to the fact admitted, there was no increase after that date and therefore no increase subject to the law. There was continuity of value, not gain or increase. In the first proposition of the Court of Appeals we, therefore, concur.

In support of its second proposition it adduced, as we have seen, *Gray v. Darlington*, 15 Wall. 63. The case arose under the income tax law of 1867, which levied "upon the gains, profits, and income of every person, . . . whether derived from any kind of property . . . or from any other source whatever, a tax of five percentum on the amount so derived over one thousand dollars . . . for the year ending the thirty-first day of December next preceding the time for levying, collecting, and paying said tax."

Darlington, in 1865, being the owner of certain United States Treasury notes, exchanged them for United States bonds. In 1869 he sold the bonds at an advance of $20,000 over the cost of the notes and upon this amount was levied a tax of five per centum as gains, profits and income for that year. He paid the tax under protest and sued to recover, and prevailed. This court, by Mr. Justice Field, said: "The question presented is whether the advance in the value of the bonds, during this period of four years, over their cost, realized by their sale, was subject to taxation as gains, profits, or income of the plaintiff for the year in which the bonds were sold. The answer which should be given to this question does not, in our judgment, admit of any doubt. The advance in the value of property during a series of years can, in no

just sense, be considered the gains, profits, or income of any one particular year of the series, although the entire amount of the advance be at one time turned into money by a sale of the property. The statute looks, with some exceptions, for subjects of taxation only to annual gains, profits, and income."

And again, "The mere fact that property has advanced in value between the date of its acquisition and sale does not authorize the imposition of a tax on the amount of the advance. Mere advance in value in no sense constitutes the gains, profits, or income specified by the statute. It constitutes and can be treated merely as increase of capital." This case has not been since questioned or modified.

The Government feels the impediment of the case and attempts to confine its ruling to the exact letter of the Act of March 2, 1867, and thereby distinguish that act from the Act of 1913 and give to the latter something of retrospective effect. Opposed to this there is a presumption, resistless except against an intention imperatively clear. The Government, however, makes its view depend upon disputable differences between certain words of the two acts. It urges that the Act of 1913 makes the income taxed one "arising or accruing" in the preceding calendar year, while the Act of 1867 makes the income one "derived." Granting that there is a shade of difference between the words, it cannot be granted that Congress made that shade a criterion of intention and committed the construction of its legislation to the disputes of purists. Besides, the contention of the Government does not reach the principle of *Gray* v. *Darlington*, which is that the gradual advance in the value of property during a series of years in no just sense can be ascribed to a particular year, not therefore as "arising or accruing," to meet the challenge of the words, in the last one of the years, as the Government contends, and taxable as income

for that year or when turned into cash.   Indeed, the case decides that such advance in value is not income at all, but merely increase of capital and not subject to a tax as income.

We concur, therefore, in the second proposition of the Circuit Court of Appeals as well as in the first and affirm the judgment.

*Affirmed.*


MR. JUSTICE BRANDEIS and MR. JUSTICE CLARKE concur in the result.