## RUTH IRON CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Eighth Circuit.
April 25, 1928.

No. 334.

1. Internal revenue ⬥25—Market value of noninterest-bearing notes received for interest in iron mine held proper basis for ascertaining taxable "income" (Revenue Act 1918, § 202(a), and Revenue Act 1921, § 202(b); Comp. St. § 6336⅛bb(a), (b).

Where petitioners, before March 1, 1913, exchanged their fee interest in iron mine for noninterest-bearing notes having various maturities over a period of many years, total face amount of which notes equaled estimated tonnage of ore in place at agreed value of $.35 per ton, held that, in absence of evidence as to cost of notes to petitioners, the fair market value of notes on March 1, 1913, constituted basis for ascertaining taxable gain under Revenue Act 1918, § 202(a), and Revenue Act 1921, § 202(b), Comp. St. § 6336⅛bb(a), (b), and, in determining this, notes were properly discounted at 5 per cent. compounded annually to that date; "income" including profit gained through sale or conversion of capital.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

2. Evidence ⬥18—It is common knowledge that long-time, noninterest-bearing notes can be cashed or sold only at legal discount rates.

It is a matter of common knowledge that noninterest-bearing notes maturing at a distant date can be cashed or sold only at legal discount rates.

Petition by the Ruth Iron Company against the Commissioner of Internal Revenue to review the decision of the United States Board of Tax Appeals sustaining a ruling of the Commissioner in assessing income tax. Affirmed.

Guy Chase, of St. Paul, Minn. (Francis W. Sullivan, of Duluth, Minn., and George W. Morgan, of St. Paul, Minn., on the brief), for petitioner.

H. R. Gamble, Sp. Asst. Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., C. M. Charest, General Counsel, Bureau of Internal Revenue, and John W. Fisher, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and JOHN B. SANBORN, District Judge.

VAN VALKENBURGH, Circuit Judge. For many years prior to January 1, 1913, petitioner was the owner in fee of an undivided 107/960ths of the Kosmerl mine, situated in St. Louis county, Minn. In 1903 petitioner and its co-owners leased the property to the Oliver Iron Mining Company for a term of 51 years, ending in 1954, for mining purposes, at a royalty of 35 cents per ton. The lease provided for certain annual minimum payments. All such minimum royalties had been paid up to December 31, 1912. January 1, 1913, the fee owners joined in a sale and conveyance of the property to the said Oliver Iron Mining Company. Under the contract between the parties it was provided that explorations should be made to determine the amount of ore on, in, or under

said premises, for the purpose of determining the purchase price. The contract of sale provided that:

"The purchase price of said lands shall be determined by multiplying the number of tons of iron ore found to exist on said lands on the foregoing basis, by thirty-five (35) cents for each ton; from such product there shall be deducted the sum of $530,000 heretofore paid in royalties under the aforesaid lease by the purchaser to the vendors; the remainder shall be divided into forty-one (41) equal annual payments considered as payable one forty-first each year, commencing with January 1st, 1913, such payments to be evidenced by the promissory notes of said Oliver Iron Mining Company, dated January 1st, 1913, without interest."

These notes were secured by mortgage. The number of tons was ascertained and agreed to be 12,700,000, making the total purchase price, computed at 35 cents per ton, to be $4,445,000, less the total royalties paid in advance of sale, to wit, $530,000. The net purchase price was therefore $3,915,000. The payment was to be made in the form of eighty-two notes dated January 1, 1913; these notes being payable January 1st of each year from 1914 to 1954, inclusive. All of these notes were the same, with the exception of the amount thereof and the name of the payee. They were in the following form:

"$————.

"Duluth, Minnesota, January 1st, 1913.

"On or before ———— years after date the Oliver Iron Mining Company, a Minnesota corporation, promises to pay to the order of Ruth Iron Company ———— dollars in gold coin or its equivalent, at the First National Bank of Duluth, Duluth, Minnesota, without interest until after maturity. Value received."

Each of the vendors received separate notes for his or its proportionate part of the total purchase price, less his or its proportion of a cash payment made on January 1, 1913.

Two of these notes became due and were paid January 1, 1919, two more January 1, 1920, and two more on January 1, 1921. In each instance the amount received by petitioner was the face of the notes without interest. The Commissioner of Internal Revenue ruled that these notes were to be taken for income tax purposes at a value discounted to March 1, 1913, at the rate of 5 per cent. compounded annually; that the difference between such March 1, 1913, valuation and the amounts received on January 1, 1919, 1920, and 1921, respectively, constituted taxable gains, profits, or income. The amounts

of deficiency income taxes thereon were determined by the Commissioner and the Board to be $99.47 for 1919, $135.49 for 1920, and $169.79 for 1921. Counsel for petitioner in their brief state that no objection is made to the amounts of the taxes defined for the years stated, provided it shall be held that any part of said sums collected constituted taxable gains, profits, or income. The United States Board of Tax Appeals sustained the ruling of the Commissioner of Internal Revenue. It is to review this decision of the Board that this original action is brought.

It appears from the record and from the briefs of counsel that four other appeals, involving the same questions, were heard together with this case by the Board of Tax Appeals. Three of these cases, Eva Iron Company, Reading Investment Company, and Estate of C. A. Severance, numbered 332, 333, and 335, originals, are before this court. It has been stipulated that the same shall be heard and decided on the printed record and briefs in this, the Ruth Iron Company, case. The claims of the parties, as well as the grounds of the decision of the Board of Tax Appeals, are well stated in the opinion of the Board, to wit:

"Petitioners do not question the Commissioner's determination of the March 1, 1913, value of the notes in question, but they contend that no portion of the payments of the face amount of the notes in the years involved constituted taxable gain, profit, or income under the Revenue Acts of 1918 and 1921 (Comp. St. § 6336⅛a et seq.), for the reason that the face amount of the notes, which in the hands of the vendors of the property represented merely evidence of a deferred purchase-price payment, was capital on March 1, 1913, and that subsequent payment thereof represented entirely such March 1, 1913, capital.

"When, on January 1, 1913, the petitioners herein sold their respective interests in the property known as the Kosmerl mine for cash and notes of the Oliver Mining Company, there was an exchange of property for property, a completed transaction. Thereafter, and on March 1, 1913, all that the petitioners had of exchangeable value was the noninterest-bearing notes of the Oliver Mining Company, maturing annually over a period of 39 years 10 months. The cost of these notes to the petitioners was the fair market value of the Kosmerl mine at the date of the exchange, less the total of the minimum royalties theretofore paid by the purchaser which was allowed as an offset against the purchase price and the cash payment of one

forty-first of the remainder of the purchase price which was paid on January 1, 1913. The petitioners have offered no evidence to prove the fair market value of the mine at the date of the exchange. On the other hand, they contend that the cost of the notes was 12,700,000 tons of ore of the value of $.35 per ton, or the equivalent of their face value. But such is not the case. The cost of the consideration received in exchange for the mine could be no greater than the fair value, at the date of the exchange, of the mine with which they parted. This seems so obviously correct to us that its mere statement is sufficient for present purposes. Lacking evidence of the fair market value of the mine, at the date of the exchange, the logical assumption is that the petitioners received value for value; that is to say, that the value of the mine was equivalent to the value of the consideration received therefor. If the value of the mine, at the date of the exchange, is equivalent to the cost of the consideration as well as the value of the consideration, it follows as a necessary corollary that the cost of the consideration is equivalent to the value of the consideration. So the Commissioner has determined that the cost of the notes to the petitioners was their discounted value, at 5 per cent. compound interest, at the date of exchange, a cost necessarily lower than the March 1, 1913, values of the notes, since, at March 1, 1913, the discount period was two months less than at the date of the exchange.

"But, contend the petitioners, the notes of the Oliver Mining Company were capital assets at March 1, 1913, and any amounts received in liquidation thereof or from the sale thereof, subsequent to that date, if not in excess of the face value of the notes, represents a mere return of capital owned on March 1, 1913. Not entirely so. We agree that the notes were capital assets at March 1, 1913, but the contention, that the amounts received in liquidation thereof after that date represent a return of capital can only be true if the face value of the notes was the fair market value thereof at March 1, 1913. True the notes evidence the right of the petitioners to ultimately receive the full amount of their face value; but the amount which the petitioners will ultimately receive does not represent their capital investment in these notes at March 1, 1913; rather this investment is represented by the fair market value of the notes at that date. This is the principle laid down in section 202(a) of the Revenue Act of 1918 (Comp. St. § 6336⅛bb [a]) and section 202(b) of the Revenue Act of 1921 (Comp. St. § 6336⅛bb[b]), where,

in prescribing the basis for the determination of gain or loss upon an exchange of property, Congress directed that the determination be made upon the basis of the fair market value of the property at March 1, 1913, in the case of property acquired before that date. One might acquire a bond having a par value of $100 at a cost of $25 and having a fair market value, at March 1, 1913, of $50. Certainly, it cannot be successfully maintained that, because the bond will entitle him to receive $100 if held to the date of maturity, he is entitled to have returned to him, free from taxation, the amount which at March 1, 1913, he was entitled to receive at some future date. Yet this is precisely the thing for which the petitioners contend.

"The petitioners further contend that no part of the deferred payments of the purchase price is income within the meaning of the applicable statutes; and that which the Commissioner treats as income from the notes is in fact a part of the deferred payments on the purchase price of the mine, a part of the capital itself. But we are not here dealing with deferred payments of the purchase price, as such. The sale of the Kosmerl mine in 1913 for cash and notes was one transaction, and the conversion of some of those notes into cash during the years in question is another transaction. It is this latter transaction which we have under consideration, and it involves simply a disposition, for cash, of notes which the petitioners owned on March 1, 1913, and which had an ascertainable value at that date. To the extent that the proceeds from the notes exceeded the March 1, 1913, value thereof, which the Commissioner has ascertained to be greater than cost, the petitioners have realized a taxable gain upon the conversion of those notes.

"Judgment for the Commissioner."

[1, 2] With this conclusion we agree. Income includes profit gained through sale or conversion of capital. Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. January 1, 1913, petitioner and his associates exchanged their interest in fee in the Kosmerl mine for the notes, of which those in suit are a part. These notes formed the basic capital on March 1, 1913, upon which gain or profit through conversion or sale is to be computed. The face of the notes equals the estimated tonnage of ore in place at the agreed value, when realized, of 35 cents per ton. In this they correspond substantially with the royalty to be realized under the then existing lease. The maturity of the notes corresponds in like manner with

the periods of royalty payments. The term of the lease and that of the note series are identical. By this exchange of property, the production of the mine from 1913 to 1954 has merely been converted into a determinate amount. It would not be contended that the ore in the mine on January 1, 1913, had the same value to petitioner that would be realized by its conversion and sale from year to year under the terms of the lease. No more can it be claimed that the notes, bearing no interest, were worth their face value January 1, 1913. If the parties had considered the property sold as worth the face of the notes at the time and place of sale, without doubt those notes would have been made to bear interest. There being no other evidence of cost introduced, the fair market value on March 1, 1913, of the property acquired, to wit, the notes, is the basis for the purpose of ascertaining taxable gain. This value is, of course, greater than it was on January 1st. It is a matter of common knowledge that noninterest-bearing notes, maturing at a distant date, can be cashed or sold only at legal discount rates. The case of a payment deferred for a period so short that the increment of interest would be negligible is not here present. But one decided case involving a similar situation has been called to our attention. Platt v. Bowers, Collector (D. C. N. Y.) 13 F.(2d) 951. In that case Platt, an insurance agent, had surrendered his right to receive commissions upon an agreement that he should receive payments of $10,000 per year for a period of fifteen years. The court, after passing upon issues not material here, said:

"It is true that the obligation which the plaintiff possessed on March 1, 1913, was of a value less than its face amount, because the payments were deferred. It may be inferred from the fact that the payments have been made that the company was entirely responsible financially. The amount of the discount which may be regarded as income is therefore susceptible of mathematical calculation at the legal interest rate. Counsel are requested to agree, without prejudice to their clients' rights, upon a computation of the amount recoverable in accordance with this opinion. Thereupon a verdict will be directed accordingly."

From this decision no appeal was taken. The language quoted sustains the applicable principle.

In Walsh, Collector, v. Brewster, 255 U. S. 536, 41 S. Ct. 392, 65 L. Ed. 762, bonds, the market value of which on March 1, 1913, was $164,480, were sold for $276,150. Their

26 F.(2d)—3

cost was $231,300. The court held that the taxpayer was taxable on $44,850, the difference between the purchase and sale price. It is said:

"The District Court, however, held that any gain realized by the sale was a mere conversion of capital assets and was not income which could lawfully be taxed. In this respect the court fell into error. The tax was properly assessed, but only upon the difference between the purchase and selling price of the bonds as stated."

The cashing of the notes at their face value does not differ from a sale at the same figure. The former involves a profit gained through sale, the latter through conversion of capital. It accrued after the act became effective. Lynch v. Turrish, 247 U. S. 221, 38 S. Ct. 537, 62 L. Ed. 1087.

It being agreed that the computations made by the Commissioner are correct, provided any part of the sums collected constitute taxable gains, profits, or income, the judgment of the Board of Tax Appeals is affirmed.

This conclusion, under the stipulation made, demands a like disposition of cases numbered 332, 333, and 335. It is so ordered.