J. C. CLEMMONS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. J. C. CLEMMONS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SOL E. GORDON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. SOL E. GORDON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36877–36880.   Promulgated July 28, 1930.

*Nicholas Callan, Esq.,* for the petitioners.
*J. Arthur Adams, Esq.,* for the respondent.

## OPINION.

Love: Petitioners contend that the disposition by them in 1925 of one-half of the capital stock of the Jefferson Amusement Co., as set out in our findings, was not a taxable transaction for the reason that, under the oral agreement they had with the Saenger Amusement Co. they did not have the unrestricted use of the consideration received for such stock, since they were obligated to keep such funds in a separate account and pay into the Jefferson Amusement Co. such sums as might be required as the building program progressed. As an alternative they contend that the full amount of the liabilities ($11,846.97) and expenses ($499.82) of the Jefferson Amusement Co. which petitioners paid in accordance with the last paragraph of the written agreement executed February 28, 1925, should be deducted from the total consideration received, instead of only one-half thereof as was done by the respondent.

We are of the opinion that respondent's determination should be sustained on both points. Section 213 of the Revenue Act of 1926 provides in part that the term " gross income " includes " gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use or interest in such property * * * or gains or profits and income derived from any source whatever * * *." The agreements which we

have set out in our findings clearly indicate that Gordon and Clemmons *sold* one-half of their stock in the Jefferson Amusement Co. for a certain stated consideration which was greater than the cost of the stock sold. The stock was originally acquired by petitioners in 1923. The excess of the consideration received over the cost is gain and should be included in gross income under the statute. The oral agreement relied upon by petitioners did not place such restrictions upon the use of the *quid pro quo* received as would prevent such consideration from becoming the absolute property of petitioners. As shown under the heading of "Disbursements" in our findings, by far the greater portion ($69,966.67) of the payments received from the Saenger Amusement Co. were invested by Gordon and Clemmons in stock of the Home Building & Loan Co. They loaned Sam Pertitta $3,500, Clemmons $300, and withdrew $10,464.70 for their own personal use. The fact that petitioners simultaneously agreed to invest additional funds in the Jefferson Amusement Co. is not material from the standpoint of determining whether petitioners made a profit or sustained a loss from the previous sale. Such investments constitute new transactions and form the basis for a subsequent determination of either gain or loss upon the subsequent sale or disposition of the new property acquired.

Petitioners point out in their brief that, instead of Gordon and Clemmons selling half of their stock to the Saenger Amusement Co., it would have been possible for the Jefferson Amusement Co. to have had its authorized capital stock increased to $100,000 par value and to have issued the additional $50,000 par value to the Saenger Amusement Co. for assets equal in value to those then owned by the Jefferson Amusement Co. They argue that had the transaction taken this form, no taxable income could have resulted to them. Petitioners further argue that in substance the result is the same as if the transaction had taken that form, and "that in applying the provisions of the Sixteenth Amendment and the Income Tax Laws enacted thereunder, the courts, both in justice to the Government, as well as in justice to the taxpayer, will disregard matters of form for the purpose of giving effect to matters of substance," citing *Lynch* v. *Turrish*, 247 U. S. 221; *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330; *Gulf Oil Corporation* v. *Lewellyn*, 248 U. S. 71; *United States* v. *Phellis*, 257 U. S. 156; and *Weiss* v. *Stearn*, 265 U. S. 242. We do not think the principle contended for by petitioners is applicable to the facts in the instant case. The substance of the transaction before us was a *sale* of stock by petitioners to the Saenger Amusement Co., which coincides with the form the parties employed. In *Anna M. Harkness*, 1 B. T. A. 127, we said:

It seems to us to be fundamentally unsound to determine income tax liability by what might have taken place rather than by what actually occurred. Even

though the practical effect may be the same in either case, the resulting tax liability may be quite different. *United States* v. *Isham*, 17 Wall. 496.

To the same effect see *R. V. Board*, 14 B. T. A. 374, 390; *William H. Mullins*, 14 B. T. A. 426, 433; *Hans Pederson*, 14 B. T. A. 1089, 1115; and *Margaret B. Sparrow et al.*, 18 B. T. A. 1, 13. Petitioners' contentions on this point are denied.

In connection with petitioners' alternative, they contend that if a profit is to be determined upon the disposition by them of one-half the stock of the Jefferson Amusement Co., such profit should be the amount of $70,082.46, instead of $76,255.86, as determined by the respondent. We have included in our findings the details showing how the respondent arrived at the amount of $76,255.86. Petitioners arrive at the amount contended for by them as follows:

Selling price (same as respondent) _____ $87,500.00
Income Jefferson Amusement Co. (same as respondent) _____ 1,786.02

Total (same as respondent) _____ 89,286.02
Deduct:
    One-half cost of 500 shares in 1923 (same as respond-
      ent) _____ $6,856.77
    Liabilities of Jefferson Amusement Co. to Mar. 1,
      1925, paid by Gordon & Clemmons_____ 11,846.97
    Expenses of Jefferson Amusement Co. to Mar. 1, 1925,
      paid by Gordon & Clemmons_____ 499.82
                                             19,203.56

Profit as contended for by petitioners_____ 70,082.46

The difference between the two computations is $6,173.40, or one-half the amount of the liabilities and expenses of the Jefferson Amusement Co. to March 1, 1925, which were paid by Gordon and Clemmons in fulfillment of the last paragraph of the written agreement dated February 28, 1925. Respondent contends that the amounts paid thereunder are part of the cost of the full 500 shares of the Jefferson Amusement Co. Petitioners contend that the amounts so paid are part of the cost of only the 250 shares sold. We agree with the respondent. The price of $87,500 was arrived at on the condition that petitioners would pay the liabilities and expenses of the business up to March 1, 1925, so that the net assets of the business on that date would have a value of $175,000. If the amounts totaling $12,346.79 had not been paid by petitioners, the net assets would have been reduced to the amount of $162,653.21. Since the Saenger Amusement Co. based their purchase price upon one-half the value of the net assets, it is clear that if the liabilities and expenses in question had not been paid the Saenger Co. would have only paid $81,326.60 for the 250 shares of Jefferson Amusement Co. stock. The result of petitioners' agreement is therefore that by investing $12,346.79 more in the Jefferson Amusement Co. they

were only able to obtain $6,173.40 more for the 250 shares sold than if they had not made the investment. The conclusion which follows is that $6,173.39 of the $12,346.79 invested represents a part of the cost of the 250 shares retained.

*Judgment will be entered for the respondent.*