**VINCENT v. McLAUGHLIN, Internal Revenue Collector.**

**No. 6800.**

Circuit Court of Appeals, Ninth Circuit.

Nov. 14, 1932.

SAWTELLE, Circuit Judge, dissenting.

William Denman and Lyman Henry, both of San Francisco, Cal., for appellant and cross-appellee.

Geo. J. Hatfield, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal. (C. M. Charest, Gen. Counsel, and E. E. Angevine, Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee and cross-appellant.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

This action was brought by the taxpayer, Vincent, to recover from the tax collector a portion of the tax paid by him upon moneys paid to him by the Santa Maria Steamship Company in 1917 in liquidating the affairs of the steamship company which was dissolved March 26, 1917. The facts were stipulated, and the question involved is as to the proper interpretation of section 31 (b) of the Income Tax Act of 1916, as added by Income Tax Act of October 3, 1917, § 1211 (40 Stat. 336), which directs that such distribution "shall constitute a part of the annual income of the distributee for the year in which received, and shall be taxed to the distributee at the rates prescribed by law for the years in which such profits or surplus were accumulated by the corporation." The sole asset of the corporation was the steamship Santa Maria, used for the transportation of oil. It was purchased in 1915 for $300,000; $10,000 had been allowed for depreciation. It was sold on January 5, 1917, for $1,000,000, and the owners paid $220,000 for release of the charter party. Profit arising from the sale after deducting the $220,000 necessary to deliver the ship as required by the contract of sale was $490,-000. It is stipulated that the value of the steamship in December, 1916, was $1,000,000. Consequently, the taxpayer contends that the $490,000 represents an accumulated surplus of the corporation for the year 1916 for the reason that the entire increase in value was during that year. On the other hand, the government contends that there was no profit or surplus within the meaning of that term as used in the revenue laws and particularly as used in section 31 (b), supra, of the Revenue Act of 1917, and consequently that the entire increment to the corporation occurred at the time the sale was consummated in January, 1917, and for that reason is taxable to the stockholder and distributee of

such profit under the rate fixed in the statute of 1917. The trial court held that it could not be determined what part of the operating income of the corporation was accumulated at any particular portion of the corporation's taxable period, which was from April 1, 1916, to April 1, 1917, and consequently held that, under the rules of the Treasury Department, Treas. Dec. 2678, the income should be prorated throughout the year, and held that $275/360$ of the profit should be deemed to have accrued prior to January 1, 1917, and the balance, $85/360$, should be deemed to have accrued during the year 1917, prior to the distribution of the property of the corporation. The judgment of the trial court was therefore predicated upon the proposition that $275/360$ of the property distributed to the shareholders, less the capital investment of $290,000 ratably apportioned to the stockholders, should be taxed at the 1916 rate. Both parties appeal to this court from this decision.

The Treasury Decision relied upon by the trial court is as follows: "In view of the difficulty which many corporations are having in determining whether earnings in 1917 up to the date of a dividend payment in that year were sufficient to cover the dividend paid, it is held that in any case where there is doubt upon the point, corporations may distribute the earnings for the accounting period within which the dividend or dividends in question were paid, ratably over the period, for the purpose of determining the amount of the earnings during the period up to the date of payment."

In view of the fact that both parties have appealed, we will hereinafter refer to Vincent as the taxpayer and to the collector of internal revenue of the First district of California as the collector.

The collector's argument is that the mere increase in value of a capital asset is not a profit, and cannot be taxed or considered as such, until the increase is realized by a sale of the capital asset, that a surplus is a profit to the corporation which has not been distributed, and that there can be no surplus within the meaning of the statute until a profit has been realized to the corporation by the sale of the asset which has increased in value; in short, that there cannot be an accumulated surplus, or accumulated undivided profit to the corporation until the sale of the asset is consummated. Consequently it is confidently argued that, the sale having been consummated in the year 1917, the profit derived therefrom must be deemed

to have been accumulated in the year 1917, notwithstanding the stipulated fact that the increase in value occurred before the beginning of that year and that there was no increase in value during the year 1917. The taxpayer, on the other hand, insists that the increase in the value of the capital assets of the corporation is an accumulated surplus within the meaning of section 31(b), supra, and that, the increase having occurred entirely in the year 1916, therefore the 1916 year rate should apply to the distribution to the taxpayer from the assets of the corporation, although the actual sale and the actual distribution occurred in the year 1917. The collector relies upon certain decisions of the Supreme Court dealing with the question of surplus, income, and profits of a corporation. For instance, Gray v. Darlington, 15 Wall. 63, 66, 21 L. Ed. 45, is cited in support of the proposition, and is quoted from to the effect that "mere advance in value in no sense constitutes the gains, profits, or income specified by the statute." Also Eisner v. Macomber, 252 U. S. 189, 214, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A. L. R. 1570, where it is said, "Enrichment through increase in value of capital investment is not income in any proper meaning of the term." The collector also relies on La Belle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 531, 65 L. Ed. 998, where a corporation, having land purchased in 1904, at $190,000, and worth $10,105,400 in 1912, increased the valuation of its lands on the corporate books accordingly and declared a stock dividend representing the increase in value of its corporate assets amounting to $9,915,400. The question considered in La Belle Iron Works v. United States, supra, was whether or not such increased value of the land constituted earned capital of the corporation within the meaning of the Revenue Act of 1917. Was this surplus "paid in or earned surplus, or undivided profits" within the meaning of section 207 of the Revenue Act of 1917 (40 Stat. 306). The Supreme Court held it was proper to attribute the entire increased valuation of $9,915,400 "to a mere appreciation in the value of the property; in short, to what is commonly known as the 'unearned increment,' not properly 'earned surplus' within the meaning of the statute." In commenting on this case, the collector says:

"An increase in value, therefore, even though carried to surplus on the corporation's books is not to be considered an 'earned' surplus.

"Can it be considered an 'accumulated surplus' under section 31 (b)? We think the Supreme Court said 'no' in the case of Edwards v. Douglas, 269 U. S. 204, 46 S. Ct. 85, 70 L. Ed. 235."

This latter case is strongly relied upon by the taxpayer, and is also confidently relied upon by the collector as sustaining their respective positions. The discussion of the meaning of section 31 (b) by Mr. Justice Brandeis, speaking for the Supreme Court in Edwards v. Douglas, supra, related to an entirely different situation than that presented by the record in this case. In Edwards v. Douglas, the corporation had earned large amounts in the year 1917 and also in the year 1916; dividends were declared in 1917. The taxpayer in that case contended that the dividends to him should be taxed at the 1916 rate, notwithstanding the fact that the profits during the year 1917 were actually sufficient to cover the dividends paid. The discussion of the court therefore centered upon the proposition as to whether the profits derived during the year 1917 were "most recently accumulated undivided profits or surplus," or whether, as the taxpayer contended, the phrase "undivided profits or surplus" was not applicable to the earnings of the corporation until a surplus or profit was shown at the end of a year on the books of a corporation. The court held that, in view of the fact that the profits during the year 1917 were amply sufficient to pay the dividends declared during the year 1917, both the letter of the statute and its purpose pointed to the conclusion that the tax rate for the year 1917 should apply to the dividends declared during that year.

That question is not involved in this case, and we are principally concerned with the statement of Mr. Justice Brandeis, as to the meaning of the phrase "surplus" as used in section 31 (b), supra. We therefore quote that portion of the opinion of Justice Brandeis relied upon by the collector, as follows: "As used in section 31 (b) the term undoubtedly means that part of the surplus which was derived from profits which, at the close of earlier annual accounting periods, were carried into the surplus account as undistributed profits. On the other hand, the term 'undivided profits' has not acquired in corporate finance and accounting a like fixed meaning. It is not known as designating generally in business an account on the corporation's books, as distinguished from profits actually earned, but not yet distributed. Few business corporations establish an 'undivided profits' account. By most corporations the term 'undivided profits' is employed

to describe profits which have neither been distributed as dividends nor carried to surplus account upon the closing of the books; that is, current undistributed earnings."

The taxpayer, on the other hand, relies strongly upon that portion of the opinion in which it is recognized that a surplus account may in certain instances represent an increase in value of a capital asset, citing La Belle Iron Works v. United States, 256 U. S. 377, 385, 41 S. Ct. 528, 65 L. Ed. 998. The matter quoted appears at page 214 of Judge Brandeis' opinion (Edwards v. Douglas, 269 U. S. 204, 214, 46 S. Ct. 85, 88, 70 L. Ed. 235), and is as follows: "The surplus account represents the net assets of a corporation in excess of all liabilities including its capital stock. This surplus may be 'paid-in surplus,' as where the stock is issued at a price above par; it may be 'earned surplus,' as where it was derived wholly from undistributed profits; or it may, among other things, represent the increase in valuation of land or other assets made upon a revaluation of the company's fixed property. See La Belle Iron Works v. U. S., 256 U. S. 377, 385, 41 S. Ct. 528, 65 L. Ed. 998."

Perhaps it was because of this portion of the opinion that the taxpayer in this case, after the sale of the ship Santa Maria in January, 1917, caused to be entered upon its books for December, 1916, a revaluation of its capital asset and an entry in its books of $750,000 as representing the surplus arising from the increase in value. We have not heretofore referred to this incident because of our belief that the mere entries in the corporate books are not decisive of the principle involved in the case at bar. It seems to be conceded by the taxpayer in the case at bar that, if the ship Santa Maria had been sold, as it was, in 1917, and if the corporation had continued as a going concern and the sale had been a mere incident in the transaction of its business, the profit derived therefrom would be deemed to have accrued to the corporation at the time of the sale, and would therefore be taxable to the stockholder when distributed to him by way of dividends at the rates fixed for the year in which the dividend was received, that is, in 1917, upon the authority of the decision of the Supreme Court in Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149, but he contends that, inasmuch as the distribution to the stockholder in the case at bar was a distribution on liquidation and not as result of the ordinary business of the corporation, the principles enunciated by the Supreme Court in Lynch v. Turrish, 247 U.

S. 221, 38 S. Ct. 537, 539, 62 L. Ed. 1087, should be applied. It must be conceded that the facts in the latter case are very nearly parallel with those in the case at bar, although the statutes involved are different. In Lynch v. Turrish, supra, the assets of the corporation had appreciated prior to March 1, 1913, the effective date of the Revenue Act of 1913, from the original value of $1,375,000 at the time of their purchase, to the sum of $2,875,000. The corporation, desiring to liquidate its affairs and retire from business, sold its assets and distributed the proceeds to its stockholders. Each stockholder thus received twice the par value of his stock, 50 per cent. of the amount distributed representing the appreciation in value of the land and the profit of the corporation. It was contended by the government that this profit was taxable to the stockholders as income received by them in the year 1913 when the sale and distribution was made, notwithstanding the fact that the appreciation in value occurred prior to 1913. The Supreme Court, speaking through Mr. Justice McKenna, held that the value of the increase thus distributed to the stockholder could not be taxed, quoting Gray v. Darlington, 15 Wall. 63, 21 L. Ed. 45, wherein Justice Fields said: " 'The question presented is whether the advance in the value of the bonds, during this period of four years, over their cost, realized by their sale, was subject to taxation as gains, profits, or income of the plaintiff for the year in which the bonds were sold. The answer which should be given to this question does not, in our judgment, admit of any doubt. The advance in the value of property during a series of years can, in no just sense, be considered the gains, profits, or income of any one particular year of the series, although the entire amount of the advance be at one time turned into money by the sale of the property. The statute looks, with some exceptions, for subjects of taxation only to annual gains, profits, and income.' "

And again: " 'The mere fact that property has advanced in value between the date of its acquisition and sale does not authorize the imposition of a tax on the amount of the advance. Mere advance in value in no sense constitutes the gains, profits, or income specified by the statute. It constitutes and can be treated merely as increase of capital.' This case has not been since questioned or modified."

The Supreme Court in the earlier case of Gray v. Darlington, was considering the effect of the Income Tax Law of 1867 (14

Stat. 478) which levied a tax upon "gains, profits, and income of every person," etc. The Supreme Court in this case .(Lynch v. Turrish) approved the decision of the District Court and Circuit Court of Appeals as based upon two propositions expressed in the opinion of the Circuit Court of Appeals written by Judge Sanborn, Circuit Judge, 236 F. 653, to the effect that the amount distributed to the stockholders was not income within the meaning of the statute (Revenue Act 1913 [38 Stat. 166]) for the following reasons: "(a) The amount was the realization of an investment made some years before, representing its gradual increase during those years, and which reached its height before the effective date of the law, that is, before March 1, 1913, and the mere change of form of the property 'as from real to personal property, or from stock to cash' was not income to its holders because the value of the property was the same after as before the change; (b) The timber lands were the property, capital and capital assets of their legal and equitable owner and the enhancement of their value during a series of years 'prior to the effective date of an income tax law,' although divided or distributed by dividend or otherwise subsequent to that date, does not become income, gains, or profits taxable under such an act."

The analogies arising from this case would point to the conclusion that the gain or increase or profit of the corporation should not be deemed to have accrued at the time of the sale of capital asset made for purposes of liquidation. We need not, however, press the analogies of the case too far, because the problem presented to us for solution is based upon a different statute passed after a number of decisions of the Supreme Court holding that the gain or profit arising from an increase in value of property in the hands of an owner could not be taxed prior to realization of that profit by sale, and that this is the ordinary and elementary rule may well be conceded. As the collector states in his brief: "It is equally clear from these opinions of the court (Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149; Lynch v. Turrish, 247 U. S. 221, 38 S. Ct. 537, 62 L. Ed. 1087; Southern Pacific Co. v. Lowe, 247 U. S. 330 [38 S. Ct. 540, 62 L. Ed. 1142]; Doyle v. Mitchell, 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054; Towne v. Eisner, 245 U. S. 418, 38 S. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570), that both for the stockholder and the corporation natural increment does not constitute income or profit and cannot become income until realized. Then only the profit arising from capital can be separated from capital itself. Indeed, that is the fundamental basis of the stock dividend cases."

In the case at bar, it should be observed that we are not dealing with the taxability of income in the ordinary sense of that term, but with the taxability of the distribution of all the assets of the corporation to the several stockholders receiving such assets in liquidation of the affairs of the company where the distributed assets consist of all the profit and all the capital of the corporation. It was held in Lynch v. Turrish that such a distribution was not taxable at all because it was a mere conversion of the assets of the corporation into money for purposes of distribution and merely represented a change of form of capital investment. It is conceded here that, in so far as such distribution contained profits of the corporation, or the accumulated surplus thereof, it is taxable in accordance with the provisions of section 31 (b) of the Revenue Act of 1917, and the only question involved is as to the rate of taxation. We think that more light can be gained from the general purpose and intent of Congress in enacting the legislation allowing stockholders of a corporation the benefits of a lower rate of tax upon profits and surplus accumulated before the effective date of the Revenue Act of 1917, and is more persuasive than the exact technical meaning of the phrase "surplus" or "undivided profits." It is obvious that the general intent of Congress was to impose a higher tax upon profits realized after the United States entered the World War than upon profits accumulated in the business prior thereto, and consequently, although such profits were distributed while the Revenue Act of 1917 was in full force and effect, and therefore, under the general system of taxation then in vogue, liable to taxation at the higher rate, Congress, in the interests of fairness to the taxpayer and in form of declaration of its intention to have profits resulting from the war bear in larger measure the burdens of the war, exempted profits accumulated or accruing before the 1st of January, 1917.

It would seem, therefore, that an increase of capital which had accrued before the 1st of January, 1917, and which was realized after the 1st of January, 1917, by a sale made so soon thereafter that it would be fairly evident that the increase had accrued before the 1st of January, as is stipu-

662

lated in the case at bar, should be taxed, in fairness, at the 1916 rate. To say the least, it is doubtful whether or not Congress intended that such an increase should be taxed at the higher than 1917 rate, and the rule is that taxing statutes are to be liberally construed in favor of the taxpayer. Bowers v. N. Y. & A. Co., 273 U. S. 346, 350, 47 S. Ct. 389, 71 L. Ed. 676; Burnet v. Niagara Brewing Co., 282 U. S. 648, 654, 51 S. Ct. 262, 75 L. Ed. 594. This reasoning leads to the conclusion that whether the increase in the value of the ship, the sole asset of the corporation, was strictly surplus or profits within the meaning of those terms as ordinarily used, it was accumulated during the year 1916, and was a surplus within the meaning and intent of Congress in enacting the provisions of section 31 (b) of the Revenue Act of 1917 now under consideration. In reaching this conclusion, we are greatly influenced by the decision of the Supreme Court in Lynch v. Turrish, and we wish to go no further than to hold in the case at bar that the principles of Lynch v. Turrish are applicable to the situation here which leads to the conclusion that the increased value of the ship was not accumulated at the time of the sale within the meaning of section 31 (b) of the Revenue Act of 1917, and that in estimating the tax rate to be applied to a dividend distributed in 1917 we should consider that the profit resulting from the increase in value of the ship had accumulated over a period and not instantaneously at the moment of sale. This conclusion leads us to reject the proposition advanced by the collector that the profit of the corporation accrued at the time of the sale of the vessel, and therefore, the distribution representing that profit, having been made in 1917, the profit should be taxed at the 1917 rate.

█ It remains to consider whether or not we shall accept the contention of the taxpayer that the profit or increase in capital accrued in 1916, or, on the other hand, the conclusion of the trial court that the profit should be apportioned between the year 1916 and 1917 in fixing the base upon which the respective tax rates of 1916 and 1917 should be imposed. What we have said so far would lead to the conclusion that the 1916 rates should be applied, and would sustain the contention of the taxpayer. But there are other matters which are entitled to consideration which led the trial court to its decision. In the first place, the amount ultimately distributed to the taxpayer not only constituted the entire capital of the corporation and the entire profit realized

from the sale of the ship, but also all profits resulting from the operation of the ship during the period of 1916 and 1917. The steamship Santa Maria was actually engaged during the entire period in the transportation of oil. The trial court found that, in view of this fact and the difficulty of determining the profit, if any, derived after the 1st of January, 1917, the proportionate rule must be applied. The finding of the trial court is thus expressed: "That it is indeterminable whether the operations of the Santa Maria Steamship Company, after January 1, 1917, constituted a profit or a loss; that the net profit or earnings for the eighty-five days of 1917, consisting of the combining of the realization of increased value of the steamship Santa Maria by her sale under contract of January 3, 1917, with the indeterminable profit or loss from operations, is an indeterminable amount; and that the exact amount of the net earnings or profits of the Santa Maria Steamship Company for the eighty-five days cannot be determined."

The collector admits that the profits realized from the operation of the steamship during 1917 cannot be determined from the evidence, but insists upon a segregation of the income of the corporation in two segments, one, the amount realized from the increased value of the ship which he contends accrued in 1917, and the other, the profits derived from the operation of the ship which he concedes should be divided in the ratio which the court applied to the total income; that is, profits from the operation of the ship plus profits from the increased value of the ship. In addition to the uncertainty as to the exact time when the profits from the operation of the ship accrued, and particularly the uncertainty as to what amount was earned in 1916 and 1917, we are impressed with the fact that the increase in value of the ship was not all profit, as was demonstrated at the time of the sale when the owner, in order to be released from the charter party, was compelled to pay a large portion of the profit (almost half of the net profit, and almost one-third of the gross profit), to wit, $220,000, to be released from the charter party. As we understand the record, it was essential to the sale that this release should be had, and the question of the cost of the release depended entirely upon the price demanded by the charterer for the surrender of his right to the use of the ship, so that, while the corporation may well have anticipated the profit of $710,000, it actually realized a net profit of only $490,000. If we assume that the

corporation had accumulated a profit in 1916 of $710,000, as the taxpayer insists, then it suffered a loss in 1917 equal to the cost of procuring a release from the charter party.

In view of these considerations, we are moved to the conclusion adopted by the trial court to the effect that it was indeterminable exactly what time during the year the profits had accrued, and that the Treasury decision requiring the prorating of the accumulated surplus throughout the year should be applied. This leads us to the conclusion that the judgment of the trial court should be affirmed. It appears, however, by stipulation, that an error was made in the amount of the judgment, in that the interest paid by the taxpayer was not incorporated in the judgment. This amount is $3,353.86. According to the stipulation, that amount is added to the judgment.

The judgment of the trial court is modified, in accordance with the stipulation, increasing the amount thereof to $29,436.94, with interest thereon from October 11, 1923.

SAWTELLE, Circuit Judge (dissenting).

I am compelled to dissent in this case, because I believe that, under its special facts, it is controlled by Lynch v. Turrish, 247 U. S. 221, 230, 38 S. Ct. 537, 62 L. Ed. 1087. I do not think that the facts in the case of Edwards v. Douglas et al., 269 U. S. 204, 46 S. Ct. 85, 70 L. Ed. 235, relied upon by the government, are sufficiently similar to those at bar to make that case determinative here.